## HUFSTUTLER v. GRAYBURG OIL CO.
### No. 8334.

Court of Civil Appeals of Texas. San Antonio. Feb. 6, 1930.

Rehearing Granted April 2, 1930. Rehearing Overruled April 30, 1930.

A. D. Dyess, of Houston, and Ball & Seeligson, of San Antonio, for appellant.

Cunningham, Moursund & Johnson, of San Antonio, for appellee.

SMITH, J.

Appellant, A. A. Hufstutler, undertook to sell to the Grayburg Oil Company, appellee, an oil and gas lease upon 70 acres of land in Gray county, Tex., and in the contract of sale expressly represented that he was the then owner of the lease, and that said lease was unincumbered. As a matter of fact, however, the lease was then owned by one J. M. West, and was incumbered with a deed of trust lien in favor of third parties to secure a large indebtedness. Under the provisions of the contract of sale, appellant was to furnish appellee with an abstract of title and tax statement "showing fee simple title in the seller in the opinion of Victor Keller, attorney, free of all liens; and the purchaser is to ac-

cept or reject said title within 20 days from the delivery to said Victor Keller of said abstract, and said title shall only be rejected for good cause in the opinion of said attorney. Title to be good and marketable, or to be made so forthwith at the expense of the seller. If the said title is rejected for good cause in the opinion of Victor Keller, attorney at law, or seller refuse to comply herewith, purchaser may enforce specific performance; but, if the title to said property should prove good in the seller, in the opinion of said attorney, seller shall execute and deliver to the purchaser an assignment of said leasehold interest in said property, and said purchaser shall pay therefor as hereinabove stated; and if the title of said seller to said property should prove good in the opinion of said attorney, and the purchaser should fail to comply with its part of this contract, then the seller may enforce specific performance."

When the attorney examined the title, as disclosed by the abstract, he discovered the facts that the lease was owned by West, that appellant had no interest therein, and that it was incumbered with an outstanding deed of trust lien. These matters were reported by the attorney to the officials of appellee, and, when appellant called upon the latter for performance, they refused to go forward with the deal, for the stated reason that appellant had "nothing to convey and sell; that plaintiff (appellant) had contracted to sell something he did not have; that plaintiff's title to the leasehold estate mentioned in the contract had already been turned down by defendant's attorneys, and the defendant would not complete the contract for that reason." It was alleged by appellant: "Thereupon, plaintiff tendered to the defendant, through its president, two transfers of the oil and gas lease on the tract of land mentioned in the contract; one of said transfers from J. M. West to defendant, the other from plaintiff to defendant, both in the terms of the contract. And plaintiff likewise tendered to defendant a release of the outstanding vendor's lien held by Blackwell & McGee. * * *"

It appears that appellant had previously owned the lease in controversy, but had executed a deed of trust thereon to secure the payment of appellant's debt to the said J. M. West; that upon appellant's default in the payment of said debt, West had foreclosed his lien and purchased the lease at the foreclosure sale; that pending said sale appellant had communicated with West's attorney (one Platt) in the foreclosure proceedings, that said attorney assured appellant that all West wanted in the transaction was to collect the debt, and that appellant "could go right ahead and sell the lease just the same and he (West) will make conveyance either to" appellant or his nominee; "that the matter had gone too far then to stop the sale, and that the said Platt would bid in said property at a nominal price and hold same for conveyance to the said Hufstutler, or to his nominee or assigns, upon payment of the amount of indebtedness due said West, or upon making some satisfactory arrangement for the payment of same out of the oil to be produced on said lease; that this conversation above related occurred during the first week of June, 1927; that thereafter and prior to the making of said contract between this plaintiff and the defendant, Grayburg Oil Company, the plaintiff received a telegram from the said Platt, acting for J. M. West, in further confirmation of his agreement made with this plaintiff, reading as follows: " 'Have just talked to West. He is agreeable to selling Gray County lands $25,000.00 stop $5,000.00 cash balance 50% first oil produced stop in addition to $25,000.00 purchaser to assume and pay off promptly the $11,000.00 claimed by McGee and Blackwell. This offer made subject to prompt acceptance'—and that in the making of said contract with the defendant of date, July 27th, 1927, the plaintiff acted in good faith and knew himself to be in a position to fully perform and discharge the burden he assumed under such contract, he at that time knowing that he could deliver the title to said 70-acre oil, gas and mineral lease, by reason of the facts herein alleged and the resultant trust relationship between him and the said West."

It is obvious from allegations in the stricken pleading that appellant himself, if not actually insolvent, had no funds with which to purchase the lease from West, but was dependent for such funds upon the consideration to be received from appellee in this transaction. The same is true with reference to lifting the outstanding vendor's lien from the lease.

It is apparent from the foregoing facts disclosed in appellant's pleadings, that, at the time he entered into the contract with appellee, he had no enforceable title to the lease. At best he had but a statement from West's attorney that West would assign the lease to appellant upon certain terms, "if promptly accepted" by appellant, but which were not alleged to have been accepted at the time this contract was made. It is obvious that this statement or agreement of his attorney was not binding upon West, who, if he chose, could have repudiated it and successfully resisted any effort of appellant or appellee to specifically enforce it against him. The alleged obligation of West to convey to appellant not being enforceable by the latter at the time the contract in question was made, appellant's obligation to convey to appellee was not susceptible of specific performance at the suit of appellee. In this situation appellee, itself ready, able, and willing to perform at the time the contract was made, could not exact performance of appellant, who was at liberty to speculate upon his advantage until the value of his bargain was determined by subsequent events, fixed in the contract.

Appellee was therefore justified in repudiating the contract upon ascertaining that it had been deceived by appellant into executing that instrument, and that appellant or West, or both of them, had been speculating upon its good faith, thus abused. It does not help appellant to say, in this situation, that he tendered substantial performance upon the happening of the contingency which rendered the obligations of the parties absolute under the terms of their contract. For, from the time of entering into the contract up to the time of the happening of that contingency, appellant was dependent for his power to perform upon the option of West to assign or retain the lease. Even up to shortly before the time he demanded performance of appellee, appellant was still uncertain as to the terms upon which West would be willing to assign the lease to appellant or his nominee. It is fair to surmise that if in the interim the value of the lease had been suddenly and greatly enhanced, as was quite possible, if not probable, at that time, West would have demanded a correspondingly greater price therefor, since he was not otherwise expressly obligated to appellant, and in nowise obligated to appellee. We conclude that, upon ascertaining that it had been thus deceived into making the contract, and that appellant had been speculating upon the advantage he had obtained over appellee by his deceit, appellee was justified in repudiating the contract and refusing to go forward with it. Green v. Chandler, 25 Tex. 149.

But appellant's cause of action, as stated in his petition, does not rest alone upon his contention of a present ability to perform, and his ultimate tender of performance. For he went further in his allegations, and set up facts which, if proven, would raise an issue of fact as to whether or not appellee, by its conduct after discovery of the true facts, waived its right to rescind, and was thereby estopped to set up those facts in defense of its refusal to perform the obligations assumed by it in the contract. It would be difficult to eke out these allegations from the stricken petition and set them in orderly array in this opinion, and we shall refrain from essaying such task. That petition covers 28 pages in the transcript.

■ It is skillfully drawn by able and astute counsel, upon whom it would be a reflection, and in derogation of the actual and active import of the document, to say that they traveled its almost interminable length without at some point, by telling language, hitting upon all cylinders of the cause of action sought to be asserted. It is deemed sufficient to say that in said pleading appellant segregated each of his several acts of bad faith, each default in the obligations assumed by him in the contract, and by efficient language set out specific acts whereby appellee waived its rights to rescind, and raised the bars of estoppel against its assertion of those rights. We therefore conclude that appellant set up a cause of action which entitled him to a trial upon issues of fact, in view of the rule that every reasonable intendment must be indulged in favor of the pleading when tested by the general demurrer.

The judgment is accordingly reversed, and the cause remanded.

### On Motion for Rehearing.

■ We have reached the conclusion, upon further consideration on rehearing, that there is nothing in the record to warrant the assumption that appellee's president, F. L. Thomson, was clothed with authority to bind appellee to a contract different from that actually entered into by the parties, or to waive compliance, on the part of appellant, with the provisions of the contract. There were no allegations showing Thomson had such authority. On the contrary, the existence of such authority was negatived by the provision in the contract that all questions concerning the title, at least, should be referred to Victor Keller, appellee's attorney. Accordingly, we conclude that the allegations that the conduct of Thomson concerning matters of title was such as to amount to a waiver on the part of the corporation, were not sufficient as a basis of waiver and estoppel. And the fact that a gauger employed by appellee gauged the flow of the Pollard well could not operate as a waiver upon the part of appellee for any purpose, in the absence of a showing of an express intent to waive a specific right. We conclude that appellant did not allege such facts as amounted to a waiver of its right to repudiate the contract when confronted with knowledge of appellant's fraudulent representations concerning the title.

Appellee's motion for rehearing will be granted, and the judgment affirmed.